David J. Lujan
LUJAN & WOLFF LLP
300 DNA Building
238 Archbishop Flores Street
Hagåtña, Guam 96910
Telephone (671) 477-8064
Facsimile (671) 477-5297
djl@lawguam.com

*Attorneys for Plaintiff*



FILED
DISTRICT COURT OF GUAM
AUG 27 2015
JEANNE G. QUINATA
CLERK OF COURT

IN THE UNITED STATES DISTRICT COURT

FOR THE TERRITORY OF GUAM

BINASTO EDMUND,

    Plaintiff,

v.

GUAM & GUAM INC., formerly known as
INTERPACIFIC RESORTS CORPORATION
and doing business as
PACIFIC ISLANDS CLUB,

    Defendant.

Civil Action 15-**15-00029**

COMPLAINT AND DEMAND FOR TRIAL BY JURY

Binasto Edmund ("Plaintiff") alleges:

**Jurisdiction and Parties**

1. This action is brought and jurisdiction lies pursuant to § 107(a) of the Americans with Disabilities Act (hereinafter "ADA"), 42 U.S.C. § 12117, which incorporates by reference § 706 of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5.

2. All conditions precedent to jurisdiction under § 706 of Title VII, 42 U.S.C. § 2000e-5(f)(3), have occurred or been complied with.

ORIGINAL

a. In accordance with the ADA and regulations, the Plaintiff filed with a charge of disability-based employment discrimination within 180 days of the occurrence of the unlawful employment practice herein alleged.

   b. The Equal Employment Opportunity Commission (hereinafter "EEOC") issued to the Plaintiff a Notice of Right to Sue on June 4, 2015.

   c. The Notice of Right to Sue advised the Plaintiff that within 90 days of his receipt of the Notice that he could sue in federal or state court for redress of his grievances that he had sought to resolve administratively through the EEOC. For purposes of the ADA, Guam is defined as a state.

   d. The Plaintiff has filed his Complaint within the 90 days allowed to him.

3. The Plaintiff is a resident of Guam.

4. All of the discriminatory employment practices alleged herein were committed within Guam.

5. Guam & Guam Inc., formerly known as Interpacific Resorts Corporation and doing business as Pacific Islands Club (hereinafter "PIC") is a Guam corporation that has stated in its annual report to the Government of Guam that its principal office is at 101 Ernst & Young Building, 231 Ypao Road, Tamuning, Guam.

6. PIC operates a resort hotel under the name Pacific Islands Club on Lots 5141-1, 5141-R1, 5242-R2-1, 5142-R2-2, 5143 and 5144-3 in the area of Tumon, Guam.

7. PIC is a "person" within the meaning of § 101(7) of the ADA and Title VII of the Civil Rights Act of 1964, as amended.

8. PIC is engaged in an industry that affects commerce within the meaning of § 101(7) of the ADA and Title VII of the Civil Rights Act of 1964, as amended.

9. PIC employs 15 or more persons and is an "employer" within the meaning of § 101(5)(A) of the ADA.

**Statement of Facts**

10. Sometime in 2005 PIC hired the Plaintiff and the Plaintiff worked continuously for PIC until on or about July 1, 2013.

11. During the course of Plaintiff's employment, PIC promoted him to the position of Chief Steward.

12. Throughout his employment, the Plaintiff fully, adequately and completely performed all of his job duties.

13. As a benefit of the Plaintiff's employment, PIC permitted him to enroll in a health insurance program with TakeCare Insurance Company ("TakeCare").

14. Sometime in 2007, the Plaintiff began experiencing back problems.

15. In 2009, the Plaintiff's Guam physician referred him to St. Luke's Hospital in the Philippines for treatment.

16. In 2012, because of continuing back problems, the Plaintiff's Guam physician referred him to Straub Clinic & Hospital (hereinafter "Straub") in Honolulu, Hawaii, for further treatment.

17. Despite the treatment at Straub, the Plaintiff continued to experience back problems, but notwithstanding the discomfort that he experienced, the Plaintiff continued to perform his work at PIC fully, adequately and completely.

18. Sometime in April 2013, Ramel A. Carlos, M.D. (hereinafter "Dr. Carlos"), a board certified neurologist practicing in Guam, after examining the Plaintiff, referred him again to Straub.

19. On April 24, 2013, the Plaintiff met with Joel Davis ("Mr. Davis"), then PIC's Director of Food & Beverages and the Plaintiff's immediate supervisor.

20. The Plaintiff's purpose for meeting with Mr. Davis was for the Plaintiff to describe to Mr. Davis issues and challenges confronting the Plaintiff in his position as Chief Steward and to alert Mr. Davis to the fact that the Plaintiff was continuing to experience problems with his back and he would be going to Straub for further treatment.

21. According to the Plaintiff, after telling Mr. Davis of his continuing back problem and the treatment he would be receiving at Straub, Mr. Davis told him, "If I were you, I should just resign. With your condition, I do not think you're capable for the job anymore. If you want to look for a job outside the hotel, that is up to you."

22. Mr. Davis' statements to the Plaintiff made it evident that Mr. Davis wanted the Plaintiff's employment with PIC ended.

23. As a part of his recommendation for treatment of the Plaintiff, Dr. Carlos estimated that the Plaintiff would be absent from work for approximately one month and that it was possible that the Plaintiff would need an additional month of physical therapy after his treatment at Straub.

24. On the basis of the referral, on or about May 1, 2013, the Plaintiff submitted to PIC a Request for Family and Medical Leave for him to be absent from work from May 1 through May 31, 2013, for treatment at Straub. **A copy of the Request for Family and Medical Leave is attached as Exhibit 1.**

25. Exhibit 1 includes a certification by Dr. Carlos as a health care provider that the Plaintiff needed cervical spine surgery in Hawaii and that the Plaintiff would likely need a month after initial treatment for additional treatment.

26. Prior to the Plaintiff's departure for his medical treatment, Theresa Taimanglo (hereinafter "Ms. Taimanglo"), the PIC's Human Resources Director, gave the Plaintiff a blank Request for Family and Medical Leave form and told the Plaintiff that he could submit it if it was necessary for him to be absent beyond May 31, 2013. The form was in fact completed at Straub by the Plaintiff's treating physician on June 4, 2013.

27. On May 12, 2013, the Plaintiff traveled to Honolulu, Hawaii, for a May 14, 2013, appointment at Straub with Mark S. Gerber, M.D., (hereinafter "Dr. Gerber"), a neurosurgeon.

28. After examining the Plaintiff, Dr. Gerber requested authorization from TakeCare to proceed with the Plaintiff's treatment and TakeCare granted the authorization and Dr. Gerber scheduled the Plaintiff for another appointment on June 4, 2013.

29. On June 4, 2013, Dr. Gerber sent PIC by facsimile transmission a PIC form Request for Family and Medical Leave. Included with the request was Dr. Gerber's certification that the Plaintiff should remain in Honolulu, Hawaii, for three weeks for acupuncture treatment. **A copy of the facsimile transmission, including confirmation of its receipt by PIC, is attached as Exhibit 2.**

30. Because of the certification by Dr. Carlos in Exhibit 1 as to the likelihood that the Plaintiff would need a month of rehabilitative treatment, PIC knew that it was likely that the Plaintiff would necessary remain in Hawaii for some time after May 31, 2013.

31. The fact that Ms. Taimanglo gave the Plaintiff a blank PIC form Request for Family and Medical Leave for him to use in Hawaii evidences that fact that PIC knew that the Plaintiff would likely be absent from Guam for a time after May 31, 2013.

32. The Plaintiff returned to Guam on June 28, 2013, a Friday.

33. The Plaintiff reported to PIC for work on July 1, 2013, a Monday.

34. On July 1, 2013, Ms. Taimanglo informed the Plaintiff that PIC considered that the Plaintiff had abandoned his position and that he had been terminated from his job as of June 11, 2013.

35. The Plaintiff had received no previous notice that his employment with PIC was in jeopardy.

36. Notwithstanding the Plaintiff's long years of service to PIC and the Plaintiff's willingness to resume his employment, PIC refused the Plaintiff's request that he be allowed to resume his work with PIC.

37. At no time did PIC offer the Plaintiff any alternative accommodation that would allow the Plaintiff to return to work.

38. From the time that the Plaintiff began having back problems until his last day of work in May 2013, PIC was aware of the Plaintiff's health issues but took no steps to reasonably accommodate his disability.

39. By terminating the Plaintiff's employment, PIC carried into effect Mr. Davis' plan that the Plaintiff should be discharged from his job as Chief Steward.

40. Within the time allowed by law and regulation, the Plaintiff complained to the Guam Department of Labor, a Fair Employment Practice Agency under the U.S. Equal Employment Opportunity Commission, of PIC's violation of laws that protect employees from being discriminated against because of disability.

41. After an investigation, Guam Department of Labor Director Manuel Q. Cruz (hereinafter "Director Cruz") issued a letter dated December 30, 2014 that "determined that there is reasonable cause to believe that Respondent [PIC] discriminated against the Charging Party [the Plaintiff], an employee with a disability who was discharged while on sick

leave, a form of reasonable accommodation." **A copy of Director Cruz's letter is attached as Exhibit 3**.

42. Director Cruz also stated that "the evidence is sufficient to establish a violation of the [Americans with Disabilities Act]." **See Exhibit 3**.

43. In Exhibit 3, Director Cruz said that his agency would contact the parties "to begin conciliation discussions."

44. A conciliation conference was convened January 17, 2015, at the Guam Department of Labor.

45. At the conciliation conference, despite the Plaintiff's willingness to seek a reasonable solution to the dispute, PIC refused to acknowledge that it had in any way violated the ADA and as a result there was no resolution of the Plaintiff's claim.

46. On June 4, 2015, Rosa M. Viramontes (hereinafter "Ms. Viramontes"), Los Angeles CA District Director for the U.S. Equal Employment Opportunity Commission, issued a Notice of Right to Sue to the Plaintiff, with a copy to Ms. Taimanglo. **A copy of the Right to Sue notice is attached as Exhibit 4**.

47. In Exhibit 4, Ms. Viramontes states, "The EEOC found reasonable cause to believe that violations of the statues(s) occurred with respect to some or all of the matters alleged in the charge but could not obtain a settlement with the Respondent [PIC] that would provide relief for you [the Plaintiff].

48. Since PIC terminated his employment in June of 2013, the Plaintiff has been unable to secure other employment.

49. Because he is unemployed, the Plaintiff has been unable to secure health insurance and as a result he is unable to secure treatment for his back ailment.

## Claim for Relief

50. Disability discrimination occurs when an employer that is subject to the ADA treats a disabled employee unfavorably because of his or her disability.

51. Disability discrimination also occurs when an employer that is subject to the ADA treats an employee unfavorably because he or she has a history of disability that is not transitory (lasting or expected to last six months or less) and minor.

52. Since at least 2009, when the Plaintiff was treated at St. Luke's Hospital in the Philippines, PIC has been aware that the Plaintiff suffers from a disabling physical impairment and thus has a "disability" within the meaning of the ADA.

53. More particularly, the Plaintiff has a physical impairment that limits one or more of his major life activities, has a record of such an impairment and is regarded by PIC as having such an impairment.

54. Notwithstanding his physical disability, the Plaintiff, performed all of his job duties for PIC fully, adequately and completely.

55. The Plaintiff remains ready, willing and able to resume his employment as Chief Steward at PIC.

56. The Plaintiff is a qualified individual with a disability as that term is defined in the ADA but who, with reasonable accommodation by PIC, can and is ready, willing and able to perform the essential functions of his job for PIC.

57. Despite Plaintiff's requests, PIC has refused to make reasonable accommodations that would allow the Plaintiff to continue to be employed as PIC's Chief Steward or in any other capacity.

58. PIC's failure to make reasonable accommodation to Plaintiff's physical disability constitutes discrimination against the Plaintiff with respect to the terms, conditions and privileges of employment and is thus a violation of the ADA.

59. PIC has failed to make any good faith effort to identify and make a reasonable accommodation with the Plaintiff.

60. PIC failed to deal in good faith with the Plaintiff in the conciliation efforts initiated by the Guam Department of Labor.

61. In failing to make reasonable accommodation to Plaintiff's physical disability, PIC has acted with reckless indifference, oppression and/or malice to the federally protected right of the Plaintiff, thereby entitling the Plaintiff to exemplary damages.

62. Under the ADA, the Plaintiff is also entitled to a reasonable attorney's fee, including litigation expenses and costs.

63. As a direct and proximate result of PIC's discrimination against the Plaintiff because of his physical disability, the Plaintiff has lost wages, benefits and enhanced employment opportunities (promotions) with PIC.

64. PIC's steadfast refusal to make reasonable accommodation to the Plaintiff has caused, continues to cause, and will cause Plaintiff to suffer substantial damages in the form of pecuniary losses, mental anguish, loss of enjoyment of life and other nonpecuniary losses.

**Prayer for Relief**

The Plaintiff prays that upon a trial by jury of six persons that he be awarded judgment against PIC as follows:

First, find and hold that Plaintiff has been damaged because of PIC's discrimination against him because of his disability.

Second, order that PIC reasonably accommodate the Plaintiff and restore him to his position as Chief Steward.

Third, order that PIC pay Plaintiff the sum that he would have earned from the time of his termination to the date of judgment.

Fourth, order that PIC pay legal interest on the sum that Plaintiff would have earned from the time of his termination to the date of judgment.

Fifth, order that PIC pay the Plaintiff the sum that it would have contributed to Plaintiff's health insurance had he not been wrongfully terminated.

Sixth, find and hold that in failing to reasonably accommodate the Plaintiff's physical disability that PIC acted with reckless indifference, oppression and/or malice to the federally protected right of the Plaintiff and award him $5,000,000.00 in exemplary damages in order to deter PIC from acts that are in violation of the ADA.

Seventh, find and hold that PIC must pay Plaintiff compensatory damages in an amount to be determined at trial.

Eighth, enjoin PIC from any further prohibited discrimination or retaliation against the Plaintiff.

Ninth, find and hold that PIC must pay Plaintiff his attorney fees, including litigation expenses and the costs of this action.

Tenth, grant such other and further relief as may be just and proper.

**Demand for Trial by Jury**

The Plaintiff demands that this matter be tried by a jury of six persons.

Dated August 27, 2015.

LUJAN & WOLFF, LLP,

_____
David J. Lujan,
*Counsel for Plaintiff*

10

Case 1:15-cv-00029   Document 1   Filed 08/27/15   Page 10 of 11

## Verification

I, Binasto Edmund, the Plaintiff in the above-entitled action, have read the Complaint and know the contents thereof. The same are true of my own knowledge, except as to those matters which are stated on information and belief, and, as to those matters, I believe them to be true. Executed August 27, 2015, in Hagàtña, Guam.

_____
Binasto Edmund